IN THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
WISCONSIN

| | | |
|---|---|---|
| The ESTATE OF SYLVILLE K. SMITH, by Personal Representative Mildred Haynes, Patrick Smith, and Mildred Haynes, on her own behalf, | ) ) ) ) ) | No. 17-cv-862 |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| v. | ) ) ) | |
| CITY OF MILWAUKEE, WISCONSIN and DOMINIQUE HEAGGAN-BROWN, | ) ) ) | |
| Defendants. | ) | |

# EXHIBIT 2

Medical Examiner Trial Testimony

David B. Owens
Danielle Hamilton
LOEVY & LOEVY
311 N. Aberdeen St, Third FL
Chicago, IL 60607
(312) 243-5900

```
 1   STATE OF WISCONSIN    CIRCUIT COURT    MILWAUKEE COUNTY
                              BRANCH 30
 2
     ----------------------------------------------------------
 3
     STATE OF WISCONSIN,
 4
                     Plaintiff,
 5
         vs.                           Case No. 2016-CF-005562
 6
     DOMINIQUE L. HEAGGAN-BROWN,
 7
                     Defendant.
 8
     ----------------------------------------------------------
 9
                        **JURY TRIAL - ALL DAY**
10
     ----------------------------------------------------------
11
     **JUNE 16, 2017**                       HON. JEFFREY A. CONEN,
12                                            Circuit Court Judge,
     LAURELL L. BRESLOW-COLLIEN, RPR    presiding.
13   Official Court Reporter

14
     **CHARGES**:
15   Count 1: First-Degree Reckless Homicide

16

17

18

19              A P P E A R A N C E S:

20   JOHN T. CHISHOLM, District Attorney, and BENJAMIN
     LINDSAY, Assistant District Attorney, appeared on behalf
21   of the State of Wisconsin.

22   STEVEN R. KOHN and JONATHAN C. SMITH, Attorneys at Law,
     appeared on behalf of the Defendant.
23
     DOMINIQUE L. HEAGGAN-BROWN, Defendant, was present in
24   custody.

25   ALSO PRESENT:  J. Michael Damarco, Investigator
```

1

```
 1                         I N D E X

 2     WITNESS                                              PAGE

 3     SPECIAL AGENT RAYMOND GIBBS

 4        Direct Examination by Mr. Chisholm ..............  8

 5        Cross-Examination by Mr. Smith .................. 38

 6        Redirect Examination by Mr. Chisholm ............ 39

 7     JESSICA LELINSKI, M.D.

 8        Direct Examination by Mr. Lindsay ............... 43

 9     MARK SIMONSON

10        Direct Examination by Mr. Lindsay ............... 58

11     STATE RESTS ......................................... 70

12     DEFENSE MOTION ...................................... 70

13     NOON RECESS ......................................... 72

14     COLLOQUY WITH DEFENDANT ............................. 73

15

16
                          E X H I B I T S
17
       NO.    DESCRIPTION                        ID'D      RCV'D
18
       53     DCI Report of the Heaggan-Brown
19            Interview ........................ 11 ........ 42

20     54     Autopsy Protocol ................. 46 ........ 56

21     55     Toxicology Report ................ 55 ........ 56

22     56     Photograph ....................... 48 ........ 54

23     57     Photograph ....................... 48 ........ 54

24     58     Photograph ....................... 48 ........ 54

25     59     Photograph ....................... 48 ........ 54
```

```
 1                  E X H I B I T S (continued)
 2      NO.    DESCRIPTION                          ID'D       RCV'D
 3      60     Photograph ........................ 49 ........ 54
 4      61     Photograph ........................ 51 ........ 54
 5      62     Bullet Recovered at Autopsy ....... 53 ........ 56
 6      63     Ballistics Report ................. 61 ........ 68
 7      65     Box Containing the Test-Fired
               Cartridge Cases and Bullets ....... 60 ........ 68
 8
        69     Box Containing Test-Fired Bullets
 9             and Cartridge Cases ............... 62 ........ 68
10      74     Photograph ........................ 51 ........ 52
```

1        J-E-S-S-I-C-A, L-E-L-I-N-S-K-I.
2                    THE COURT:  All right.
3                    MR. KOHN:  Side-bar.
4                    (An off-the-record side-bar was held
5        and then continued in chambers.)
6                    THE BAILIFF:  All rise for the jury.
7                    (The jury left the courtroom.)
8                    THE BAILIFF:  You may be seated.
9                    THE COURT:  We went into chambers to
10       discuss an evidentiary matter, and now we're on a
11       10-minute break.
12                   (Recess taken from 10:39 a.m. until
13       11:05 a.m.)
14                   THE BAILIFF:  All rise for the jury.
15                   (The jury entered the courtroom.)
16                   THE BAILIFF:  You may be seated.
17                   THE COURT:  All right.  We have all of
18       our vital information on the record from before so
19       you may proceed.
20                   MR. LINDSAY:  Thank you, Your Honor.
21                          **DIRECT EXAMINATION**
22    BY MR. LINDSAY:
23    Q    Good morning.  How are you employed?
24    A    I work as an assistant medical examiner for the
25         Milwaukee County Medical Examiner's Office.

1  Q    And what are your duties as an assistant medical
2       examiner?
3  A    My primary duty is to determine cause and manner
4       of death, and often we do that by doing an autopsy
5       on a body.
6  Q    And did you conduct an autopsy for a decedent
7       Sylville K. Smith?
8  A    I did.
9  Q    And can you briefly describe for the jury what you
10      do as you conduct the autopsy and why you do that?
11 A    So an autopsy is a medical procedure performed on
12      a body after death, and we do that in cases where
13      we need to evaluate disease and injury to find out
14      why a person died.
15               So we start out by looking at the body
16      externally, document what the person looks like,
17      the clothes they have on, any injuries or sign of
18      disease we can see from the outside.  Then we
19      proceed with an internal exam in which we look
20      inside the head, the chest, and the abdomen, at
21      all of the organs, look for any sign of disease,
22      any sign of injury.
23               Also during an autopsy we collect items
24      of evidence, if it applies in that case, things
25      like a bullet that might be in a body, and also

44

SMITH 004376

|     |   |                                                             |
| --: | - | ----------------------------------------------------------- |
|  1  |   | specimens that we can use for drug and alcohol              |
|  2  |   | testing, so blood and other body fluids.                    |
|  3  | Q | And when you -- First of all, are you aware of how          |
|  4  |   | the decedent arrived at the medical examiner's              |
|  5  |   | office?                                                     |
|  6  | A | Can you explain what you mean by how he arrived?            |
|  7  | Q | In what manner was he transported there?                    |
|  8  | A | According to our reports, there was a med unit              |
|  9  |   | that brought the body to our office.                        |
| 10  | Q | And what date did you conduct the autopsy on?               |
| 11  | A | That was on August 15th of 2016.                            |
| 12  | Q | You indicated that you recover evidence during the          |
| 13  |   | course of the autopsy as well?                              |
| 14  | A | That's correct.                                             |
| 15  | Q | Did you recover any clothing from the decedent in           |
| 16  |   | this case?                                                  |
| 17  | A | Yes.  I documented the clothing and then removed            |
| 18  |   | it from the body before starting the autopsy.               |
| 19  | Q | Did that include blue boxer briefs, a pair of               |
| 20  |   | shorts, and a blue and white tank top?                      |
| 21  | A | I believe it was a purple and white tank top, but           |
| 22  |   | yes, I did recover those items.                             |
| 23  | Q | I'm going to show you what's been marked for                |
| 24  |   | identification purposes as Exhibit No. 54.  And             |
| 25  |   | I'm going to ask if you can identify what this              |

|   |   |                                                                 |
|---|---|-----------------------------------------------------------------|
| 1 |   | item is.                                                        |
| 2 | A | This is a copy of my autopsy protocol, so this is               |
| 3 |   | the report that I put together after doing an                   |
| 4 |   | autopsy that documents all of my findings.                      |
| 5 | Q | And is that a true and accurate copy of the report              |
| 6 |   | that you generated for the autopsy of Sylville                  |
| 7 |   | Smith?                                                          |
| 8 | A | Yes, it is.                                                     |
| 9 | Q | You previously testified that one, you are looking              |
| 10|   | to identify the cause and the manner of death.                  |
| 11|   | Can you distinguish for the jury the difference                 |
| 12|   | between those two things?                                       |
| 13| A | Yes.  Cause of death refers to the disease or                   |
| 14|   | injury that killed a person.  So it could be                    |
| 15|   | something like a heart attack, heart disease, or                |
| 16|   | it could be some sort of injury, drug overdose,                 |
| 17|   | things like that.  Manner of death is something we              |
| 18|   | use to assign a category to the death to kind of                |
| 19|   | explain what type of death it is, and the options               |
| 20|   | that we have are natural, so if it's some sort of               |
| 21|   | natural disease process that killed the person;                 |
| 22|   | suicide, which is when a person takes their own                 |
| 23|   | life; homicide, which means death at the hands of               |
| 24|   | another person; accident, and that covers things                |
| 25|   | like car accident, drug overdoses, drownings; and               |

|    |   |                                                              |
|----|---|--------------------------------------------------------------|
| 1  |   | then undetermined if we can't put a death in one             |
| 2  |   | of those specific categories.                                |
| 3  | Q | And when you say "homicide," the homicide as a               |
| 4  |   | manner of death is distinguishable from homicide             |
| 5  |   | as a criminal charge; is that correct?                       |
| 6  | A | That's correct.                                              |
| 7  | Q | So when you say, for instance, that the manner of            |
| 8  |   | death in a certain case would be homicide, you're            |
| 9  |   | not weighing in as to whether a homicide was                 |
| 10 |   | committed in the criminal sense?                             |
| 11 | A | That's correct.                                              |
| 12 | Q | Now, with regard to your autopsy of the decedent             |
| 13 |   | in this case, what did you determine was the cause           |
| 14 |   | of death?                                                    |
| 15 | A | The cause of death I determined was gunshot wounds           |
| 16 |   | of the chest and right arm.                                  |
| 17 | Q | And what did you determine was the manner of                 |
| 18 |   | death?                                                       |
| 19 | A | The manner of death was homicide.                            |
| 20 | Q | Now, I'm going to show you a series of items that            |
| 21 |   | are identified as exhibits -- well, starting with            |
| 22 |   | 57 and continuing through 61, these have been                |
| 23 |   | previously shown to the defense as well.  And I'll           |
| 24 |   | just set Exhibit 54 to the side for the time                 |
| 25 |   | being.  I'd just ask that you take a look at these           |

47

|     |   |                                                              |
|-----|---|--------------------------------------------------------------|
| 1   |   | items very briefly and tell me if you can identify           |
| 2   |   | what those are.                                              |
| 3   | A | These are photographs that were taken by me during           |
| 4   |   | the autopsy.                                                 |
| 5   | Q | And I apologize, I think I said starting at 57.              |
| 6   |   | You have -- let's start with 56.                             |
| 7   | A | I do have 56, which is also a photograph that I              |
| 8   |   | took at autopsy.                                             |
| 9   | Q | And what is Exhibit 56?                                      |
| 10  | A | It's a photograph showing the right arm that shows           |
| 11  |   | the entrance gunshot wound on the right arm.                 |
| 12  | Q | And is that in the right bicep area?                         |
| 13  | A | Correct.                                                     |
| 14  | Q | And what is Exhibit No. 57?                                  |
| 15  | A | No. 57 shows the inner surface of the right arm              |
| 16  |   | where there's an exit gunshot wound.                         |
| 17  | Q | And then 58?                                                 |
| 18  | A | No. 58 is a view showing the front of the upper              |
| 19  |   | right arm where you can see both the entrance and            |
| 20  |   | the exit gunshot wound and a probe that shows that           |
| 21  |   | the two holes are connected.                                 |
| 22  | Q | And with regard to 59?                                       |
| 23  | A | 59 appears to be a slightly cropped photograph               |
| 24  |   | from what I took, and it shows both the upper arm            |
| 25  |   | and the chest, so you can see the two gunshot                |

1           wounds on the upper right arm and also an entrance
2           gunshot wound on the upper right chest.
3    Q      And then what is Exhibit 60?
4    A      Exhibit 60 is a close-up photo of the entrance
5           gunshot wound on the right upper chest.
6    Q      And these are all photographs that you took during
7           the course of the autopsy on August 15th?
8    A      That's correct.
9    Q      And these are all injuries sustained to the body
10          of Sylville Smith?
11   A      Yes.
12   Q      Are they accurate photographs representing the
13          gunshot wounds that you observed?
14   A      Yes, they are.
15   Q      You've identified two gunshot wounds to Mr. Smith.
16          I would like to start with the bicep, the injury
17          to the bicep first.  During the course of your
18          autopsy, were you able to determine the extent of
19          the injury there?
20   A      The gunshot wound pathway went fairly
21          superficially through the arm just under the
22          surface of the skin, so it went through soft
23          tissue.
24   Q      In your estimation, was that injury to the right
25          bicep likely a survivable injury?

49

1  A    Yes.
2  Q    With regard to the gunshot wound to the chest,
3       were you able to determine the extent of the
4       injury regarding that wound?
5  A    Can you explain what you would like me to describe
6       by "extent"?
7  Q    Did you ever -- You indicated there was an entry
8       wound.  Did you ever find an exit wound for that
9       injury?
10 A    No, there is no exit wound.  There was a bullet in
11      the lower left side of the back that I recovered.
12 Q    So during the course of the autopsy, did you
13      attempt to determine the path that that bullet
14      took through the decedent's body?
15 A    Yes, I did.
16 Q    And can you describe just very briefly the path
17      that you were able to determine?
18 A    The main things that the bullet path went through
19      were the heart and the left lung.
20 Q    And based on your observations of that injury, do
21      you think the gunshot wound to the chest was
22      likely a survivable injury?
23 A    I do not think it was survivable.
24 Q    And you indicated that you recovered a bullet from
25      inside the body of the decedent?

50

| | | |
|---|---|---|
| 1 | A | That's correct. |
| 2 | Q | Where did you -- where did you recover that item? |
| 3 | A | It was in the soft tissue on the lower left side of the back. |
| 5 | Q | And can you describe just very briefly what Exhibit 61 is? |
| 7 | A | Exhibit 61 is a photograph taken looking down at the chest after removing all of the organs, so you can see the back of the chest cavity, and it shows a gunshot wound that goes through the back left side of the chest. Just deep to that wound is where I recovered the bullet. |
| 13 | Q | And I'm going to approach you with what's been marked as Exhibit 74, and I'll take Exhibits 56 through 61 from you at this time. Do you recognize that item? |
| 17 | A | Yes, I do. |
| 18 | Q | And what is that item? |
| 19 | A | This is a photograph that I took at the end of the autopsy of the bullet that I recovered from the left lower back. |
| 22 | Q | And is that an accurate representation of the bullet that you recovered from the body of the decedent? |
| 25 | A | Yes. |

|   |   |
|---|---|
| 1 | MR. LINDSAY: Your Honor, I would ask |
| 2 | that Exhibits 56 through 61 be moved into |
| 3 | evidence.  I would also ask that Exhibit No. 74 -- |
| 4 | I believe that's the correct exhibit number -- |
| 5 | THE WITNESS: Yes. |
| 6 | MR. LINDSAY: -- be moved in evidence. |
| 7 | I would ask only to publish Exhibit 74 to the |
| 8 | jury. |
| 9 | THE COURT: Well, any objection with |
| 10 | admission first? |
| 11 | MR. SMITH: No objection. |
| 12 | THE COURT: They'll all be received. |
| 13 | (Exhibits 54-61 and 74 were received.) |
| 14 | THE COURT: Let's see the lawyers at |
| 15 | the side-bar with regarding publication. |
| 16 | (An off-the-record side-bar was held.) |
| 17 | THE COURT: All right.  So that is 74, |
| 18 | correct? |
| 19 | MR. LINDSAY: Correct. |
| 20 | THE COURT: That may be published. |
| 21 | (Exhibit 74 was published.) |
| 22 | BY MR. LINDSAY: |
| 23 | Q   And can you describe for the jury exactly what |
| 24 | they're looking at on the screen? |
| 25 | A   So at the top of the screen you can see the bullet |

52

1 sitting in a white towel. I wrote the location
2 that I recovered the bullet from, 181 G-R stands
3 for grains, so that's the weight of the bullet,
4 and then at the bottom you can see part of what's
5 a ruler. It's 5 centimeters long, just to act as
6 a scale to show how big the bullet is. And then
7 that ruler also has the case number, the autopsy
8 case number.
9 Q And is this a perspective of the bullet looking
10 from the top essentially?
11 A Correct.
12 Q I'm going to show you what's been marked for
13 identification purposes as Exhibit No. 62. I'm
14 going to ask if you recognize what Exhibit No. 62
15 is.
16 A So Exhibit 62 is a sealed evidence bag, and what's
17 in the bag is a smaller bag that I used at autopsy
18 to place the bullet in labeled with our autopsy
19 case number, and I had wrote the location that the
20 bullet was recovered from, and then that was
21 submitted to police as evidence.
22 Q And are you able to determine whether there's a
23 medical examiner case number within that exhibit?
24 A Yes, there is.
25 Q And is your handwriting also contained within that

```
 1              exhibit?
 2    A    Yes.
 3    Q    So once you recovered the bullet, what did you do
 4         with it at that point?
 5    A    After taking a photograph and weighing the bullet,
 6         I put it in this sealed bag, and then that was
 7         submitted to police.
 8    Q    And in this case the investigating agency was the
 9         Department of Justice?
10    A    That's correct.
11    Q    Dr. Lelinski, all of your testimony today and the
12         conclusions that you reached in the performance of
13         the autopsy, did you reach those conclusions to a
14         reasonable degree of medical certainty?
15    A    Yes, I did.
16                   MR. LINDSAY:  Your Honor, I would
17         move -- oh, and I have one more thing.  I
18         apologize.
19    BY MR. LINDSAY:
20    Q    I'm going to approach you with what's been marked
21         as Exhibit No. 55, and defense counsel has a copy
22         on his desk.  I'm going to take Exhibit 54 from
23         the witness stand and I'm going to take Exhibit 62
24         from the witness stand.
25                   THE COURT:  Okay.
```

54

```
 1     BY MR. LINDSAY:
 2     Q    Do you recognize what Exhibit 55 is?
 3     A    Yes, I do.
 4     Q    And what is that?
 5     A    This is a copy of the toxicology report that was
 6          generated by the lab at our office, and it gives
 7          drug testing results from the specimens that I
 8          took at autopsy.
 9     Q    And is this a standard part of an autopsy that
10          would be performed at the Milwaukee County Medical
11          Examiner's Office?
12     A    Yes, it is.
13     Q    And what specifically does this toxicology
14          measure?
15     A    The things that were tested for included alcohol
16          and a drug screen.
17     Q    And is this in relation to Mr. Sylville K. Smith,
18          the decedent?
19     A    Yes, it is.
20     Q    And does his drug screen show anything of note
21          with regard to the autopsy findings?
22     A    His blood screen positive for cannabinoids, which
23          is marijuana, and he also had cotinine in his
24          blood, which is a product of cigarette smoking,
25          and he also had oxycodone in his blood.
```

1     MR. LINDSAY:  Your Honor, at this point
2     I would move Exhibit 54 and 55 into evidence; that
3     is the autopsy protocol and the toxicology report.
4     I would also move Exhibit 62 into evidence.
5             THE COURT:  Any objection?
6             MR. SMITH:  No objection.
7             THE COURT:  All will be received.
8             (Exhibit 54, 55 and 62 were received.)
9             MR. LINDSAY:  This is the last item I
10    anticipate publishing; that Exhibit 62, which is
11    the fragment, be published to the jury, either at
12    this point or during the next witness's testimony.
13            THE COURT:  Meaning passed around?
14            MR. LINDSAY:  Correct.
15            THE COURT:  I don't care.  We can do it
16    now or later, but we're not doing it twice.
17            MR. LINDSAY:  Correct.
18            THE COURT:  You tell me what you want
19    to do.  It's only going to be passed around once.
20            MR. LINDSAY:  I'll wait until the next
21    witness, Judge.
22            THE COURT:  Okay.
23            MR. LINDSAY:  I have no further
24    questions for this witness.
25            THE COURT:  Cross-examination.

```
 1                    MR. SMITH:  No questions, Your Honor.
 2                    THE COURT:  All right.  Thank you.  You
 3         may step down.
 4                    THE WITNESS:  Thank you.
 5                    (Witness excused.)
 6                    THE COURT:  We can take the picture
 7         down, unless you need it for something.
 8                    MR. LINDSAY:  Your Honor, the State's
 9         next witness will be Mark Simonson.
10                    THE COURT:  Raise your right hand.
11                    **MARK SIMONSON**, called as a witness
12         herein, being first duly sworn, was examined and
13         testified as follows:
14                    THE COURT:  Have a seat, please.
15         Adjust the microphone.  Tell us your name; spell
16         your first and last name.
17                    THE WITNESS:  My name is Mark Simonson,
18         M-A-R-K, S-I-M-O-N-S-O-N.
19                    THE COURT:  All right.  You may
20         proceed.
21                    MR. LINDSAY:  Thank you, Your Honor.
22         And I'm having your bailiff examine Exhibit 34 and
23         Exhibit 38 which are both firearms and determine
24         whether they are safe at this point.
25                    Your Honor, would you like to take a
```

```
 1    STATE OF WISCONSIN    )
 2                          ) ss.
 3    MILWAUKEE COUNTY      )
 4
 5
 6                    I, LAURELL L. BRESLOW-COLLIEN,
 7    Official Court Reporter in and for the Circuit Court of
 8    Milwaukee County, do hereby certify that the foregoing
 9    is a true and correct transcript of all the proceedings
10    had in the above-entitled matter as the same are
11    contained in my original machine shorthand notes on the
12    said trial or proceedings.
13
14    Dated at Milwaukee, Wisconsin on October 23, 2017.
15
16
17
18
19
20    _____
      Electronically signed by:
21    LAURELL L. BRESLOW-COLLIEN, RPR
      OFFICIAL COURT REPORTER
22
23
24
25
```