IN THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
WISCONSIN

| | |
|---|---|
| The ESTATE OF SYLVILLE K. SMITH, by Personal Representative Mildred Haynes, Patrick Smith, and Mildred Haynes, on her own behalf,<br><br>        Plaintiffs,<br><br>        v.<br><br>CITY OF MILWAUKEE, WISCONSIN and DOMINIQUE HEAGGAN-BROWN,<br><br>        Defendants. | No. 17-cv-862<br><br>JURY TRIAL DEMANDED |

# EXHIBIT 27

Sgt. Allen Groszczyk Deposition Transcript

David B. Owens
Danielle Hamilton
LOEVY & LOEVY
311 N. Aberdeen St, Third FL
Chicago, IL 60607
(312) 243-5900

In the Estate of Sylville K. Smith vs City of Milwaukee, et al.

2:17 cv 862-LA

Transcript of the Testimony of:

# SGT. ALLEN GROSZCZYK

October 23, 2018




Case 2:17-cv-00862-LA    Filed 06/14/19    Page 2 of 9    Document 50-30

```
          IN THE UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WISCONSIN
---------------------------------------------------------------

The ESTATE of SYLVILLE K. SMITH,
by Personal Representative Mildred
Haynes, Patrick Smith, and Mildred
Haynes, on her own behalf,

             Plaintiffs,

             vs.                       Case No. 2:17 cv 862-LA

CITY OF MILWAUKEE, WISCONSIN
AND DOMINIQUE HEAGGAN-BROWN,

             Defendants.

---------------------------------------------------------------



         30(b)(6) Deposition of SGT. ALLEN GROSZCZYK

              Tuesday, October 23rd, 2018


                      9:12 a.m.

                        at

            MILWAUKEE CITY ATTORNEY'S OFFICE
           841 North Broadway, Seventh Floor
                 Milwaukee, Wisconsin







            Reported by Kealoha A. Schupp, RPR
```

    30(b)(6) deposition of SGT. ALLEN GROSZCZYK, a witness in the above-entitled action, taken at the instance of the Plaintiffs, pursuant to the Federal Rules of Civil Procedure, pursuant to notice, before Kealoha A. Schupp, RPR and Notary Public, State of Wisconsin, at MILWAUKEE CITY ATTORNEY'S OFFICE, 841 North Broadway, Seventh Floor, Milwaukee, Wisconsin, on the 23rd day of October, 2018, commencing at 9:12 a.m. and concluding at 10:12 a.m.

A P P E A R A N C E S:

  LOEVY & LOEVY, by
   Mr. David B. Owens
   Ms. Danielle Hamilton
   311 North Aberdeen Street, Third Floor
   Chicago, Illinois 60607
   Appeared on behalf of Plaintiffs.

  MILWAUKEE CITY ATTORNEY'S OFFICE, by
   Ms. Naomi E. Gehling
   841 North Broadway, Seventh Floor
   Milwaukee, Wisconsin 53202
   Appeared on behalf of Defendants.

```
 1                    ** I N D E X **
 2                   E X A M I N A T I O N
 3   BY MR. OWENS................................  4
 4
 5
 6              PREVIOUSLY MARKED EXHIBITS
 7   EXHIBIT NO.                          PAGE IDENTIFIED
 8   Exh. 1    Amended Notice                    6
     Exh. 10   Use of Force SOP                  7
 9
10
11
12                    E X H I B I T S
13   EXHIBIT NO.                          PAGE IDENTIFIED
14   Exh. 8    Electronic Control Device SOP     9
     Exh. 9    Training Records of Heaggan-Brown 48
15
16      (Original exhibits retained by court reporter and
17         attached to original transcript. Copies attached to
18            transcript copies as requested.)
19
20                    R E Q U E S T S
21   ITEM REQUESTED                                PAGE
22
23                       (None.)
24
25
```

```
 1            TRANSCRIPT OF PROCEEDINGS
 2            ALLEN GROSZCZYK, called as a witness
 3     herein, having been first duly sworn on oath, was
 4     examined and testified as follows:
 5                     EXAMINATION
 6  BY MR. OWENS:
 7  Q    Would you please state and spell your name for the
 8       record, sir.
 9  A    Sergeant Allen Groszczyk.  A-L-L-E-N,
10       G-R-O-S-Z-C-Z-Y-K.
11  Q    And where are you employed?
12  A    City of Milwaukee Police Department.
13  Q    What do you do at the City of Milwaukee Police
14       Department?
15  A    I'm the range master for the Milwaukee Police
16       Department.
17  Q    What's a range master?
18  A    I run all the firearms training for the police
19       department, and I also am in charge of tactical
20       training for recruit classes and in-service.
21  Q    And, just, how long have you been with the
22       department, if you can just describe --
23  A    Just over 25 years.
24  Q    Okay.  Have you given a deposition before, sir?
25  A    Yes.
```

1          phrase "then existing," right?  Do you see that?
2    A     Yes.
3    Q     All right.  Under the policies and practices of
4          the Milwaukee Police Department, does each use of
5          deadly force have to be justified on its own?
6    A     Depends what you mean by the word "each use of
7          deadly force."
8                        We use -- we use that -- we're
9          looking at a deadly force incident as a whole
10         incident onto itself.
11   Q     Okay.  So the department doesn't analyze, in terms
12         of what the policies and practices are, the --
13         sort of like a shot-by-shot analysis; it evaluates
14         an incident holistically?
15   A     Yeah.  In a way, it's -- it's looked at as a whole
16         incident, as an incident onto itself.  Because
17         these instances are often dynamic and moving and
18         mobile, to parse it out into individual instances
19         like that, it's -- that gets to be -- it's
20         difficult, unless something is out of the ordinary
21         where -- even if it is a bigger incident, I think
22         it's all looked at as one incident --
23   Q     Viewed --
24   A     -- one situation.
25   Q     Sorry.  Were you finished?

1　A　That's what it says here, "significant."
2　Q　And that's the policy of the department that was
3　　　in effect in 2016?
4　A　Yes.
5　Q　Wisconsin's an open carry state, correct?
6　A　Yes.
7　Q　And an officer would not be justified in shooting
8　　　somebody just because they were openly carrying a
9　　　gun, right?
10　A　No.
11　Q　An officer would not be justified in shooting or
12　　　using deadly force just because somebody was
13　　　running away from them with a gun, correct?
14　A　On its face.  There's more circumstances.  That's
15　　　how -- each, you know, incident is -- has more
16　　　facts, so...
17　Q　Okay.  So an officer would need a reason to
18　　　believe that that person running away with a gun
19　　　was going to harm the officer or somebody else,
20　　　right?
21　A　Yes.
22　Q　And it would have to be, under this policy, a
23　　　significant threat, correct?
24　A　Yes.
25　Q　All right.  What are the things, as a matter of

1  the situation at hand.  I mean, you can't just
2  walk around with it all the time, but it's --
3  Q  What's the limit, sir?
4  A  We make it, as it says in B, when you reasonably
5  believe you're going to need it, and -- in the
6  performance of your duties.  There's a lot of --
7  like I already explained, a lot of different
8  situations.
9  We don't get into -- we try to get
10  the officers, as I've explained, to understand how
11  dangerous situations are, and then they can decide
12  to draw the weapon and have it in hand if they
13  anticipate there may be a deadly force threat.
14  So it's a very -- it's not a very
15  hard and fast line.  It's often based off
16  experience and based off past -- past experiences
17  and training.
18  Q  So is it appropriate for police officers to draw
19  their firearms and point them at suspects when
20  trying to write a parking ticket?
21  A  No.
22  Q  Now, one thing that I wanted to understand was
23  the -- what written policy, if any, would govern a
24  situation in which an officer has created or made
25  decisions that have escalated the situation to