IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| The ESTATE of SYLVILLE K. SMITH, by Personal Representative Mildred Haynes, Patrick Smith, and Mildred Haynes, on her own behalf. | ) ) ) ) | No. 2:17 cv 862-LA |
| Plaintiffs, | ) ) | Hon. Lynn Adelman, presiding |
| v. | ) ) | |
| CITY OF MILWAUKEE, WISCONSIN AND DOMINIQUE HEAGGAN-BROWN, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) ) | |

**PLAINTIFFS' *CORRECTED* REPLY IN SUPPORT OF MOTION TO CERTIFY DEFENDANT HEAGGAN-BROWN'S INTERLOCUTORY APPEAL AS FRIVOLOUS**

Plaintiffs, by and through their counsel, submit the following reply in support for their motion seeking to certify Defendant Heaggan-Brown's interlocutory appeal as frivolous, stating:

**Introduction**

In Plaintiffs' motion to certify Heaggan-Brown's appeal as frivolous because the appellate court lacks jurisdiction over his contentions that he is entitled to summary judgment, Plaintiffs were clear: Heaggan-Brown must accept Plaintiffs' facts, but did not. The Response Brief only makes matters worse. Therein, rather than accepting contrary facts—ones this Court found were disputed—Heaggan-Brown simply asks this Court to pretend that those facts do not exist. Rather than focus on the totality of the evidence, then, Heaggan-Brown believes he is entitled to pursue an appeal (at summary judgment) on the basis of simply excising facts that run counter to his proffered position and that illustrate why a reasonable jury can find his actions were unreasonable. This is the anathema of how summary judgment works. It is also contrary to the Fourth

1

Amendment's standard, which requires an examination of the totality of the facts, not just those that benefit the officer alleged to have unreasonably used deadly force.

In electing to make the argument that this Court should simply ignore the disputed facts—rather than accepting Plaintiffs' events—Heaggan-Brown's response confirms one thing: Plaintiffs' motion should be granted. The Seventh Circuit lacks jurisdiction to consider his fact-bound challenge to the totality of the record evidence (and inferences therefrom) being presented in the light most favorable to Plaintiff. Instead, under *Johnson v. Jones,* 515 U.S. 304 (1995), and Seventh Circuit cases applying *Johnson*, jurisdiction above is obviously lacking. That being the case, this Court should certify the appeal as lacking jurisdiction pursuant to *Apostol v. Gallon*, 870 F.2d 1335, 1339 (7th Cir. 1989), and set this matter for trial.

## Argument

### I. Heaggan-Brown Has Ignored Controlling Law

#### A. *Johnson* Expanded The Scope of *Apostol* Certification

Reading Heaggan-Brown's response, one might think that interlocutory appeals are the rule, not the exception, in federal court. But, that has it backwards: appeals as of right in the federal courts are limited to "appeals from all final decisions of the district courts of the United States," 28 U.S.C. § 1291, and the collateral bar doctrine presents what must be a *narrow* exception to that rule. *Mitchell v. Forsyth*, 472 U.S. 511, 522 (1985). Accordingly, this Court is empowered to certify that an appeal falls outside the appellate court's jurisdiction to ensure that the exception does not swallow the rule and prevent protracted and costly litigation by litigants who are willing to take every step to avoid a trial. *Apostol v. Gallon*, 870 F.2d 1335, 1339 (7th Cir. 1989). Under established law, (1) a defendant cannot halt district court proceedings by asserting a frivolous interlocutory appeal; and (2) a defendant cannot immediately appeal a district court order denying qualified immunity where the defendant disputes the facts the Court found at summary judgment. *Behrens v. Peltier*, 516 U.S. 299,

2

310-11 (1996); *Johnson v. Jones*, 515 U.S. 304 (1995); *Koh v. Ustich*, 933 F.3d 836, 843 (7th Cir. 2019).

Heaggan-Brown's first point of emphasis is that the Seventh Circuit has stated this Court's discretion to certify an appeal as beyond the appellate court's jurisdiction and thus "frivolous" on that basis must be used "sparingly." Br. at 1 (citing *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir. 1992)). But, this statement from 1992 must be understood in the context it was made. For one, the Supreme Court had yet to approve of the *Apostol* procedure (which it did in 1996, *see Behrens*, 516 U.S. at 310-11).

Second, and perhaps more important, the Supreme Court had yet to decide *Johnson v. Jones*, which supplies the rule that defendants cannot immediately appeal district court orders denying qualified immunity where they turn on disputes of facts (or inferences about those facts). Indeed, *Jones* is a principal basis for why, particularly recently, the Seventh Circuit has repeatedly refused to allow public officials to pursue interlocutory appeals by finding that they fall outside of the scope of the limited interlocutory exception. *E.g.*, *Koh v. Ustich*, , 843 (7th Cir. 2019); *Hurt v. Wise*, 880 F.3d 831, 839 (7th Cir. 2018), *partially abrogated on other grounds by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019)); *Gutierrez v. Kermon*, 722 F.3d 1003, 1010 (7th Cir. 2013); *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011).

Moreover, the response brief ignores completely the Seventh Circuit's *en banc* decision *Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2015) (en banc), which was decided before the shooting at issue here took place and made abundantly clear that *Johnson* is "still very much controlling law," and found it lacked jurisdiction over the defendants' appeal because they—just like Heaggan-Brown— had "fail[ed] to take all the facts and inferences in the summary judgment record in the light most favorable to [Plaintiff], and their arguments dispute the district court's conclusions of the sufficiency of the evidence on questions of fact." *Id.* at 528.

Tellingly, Heagan-Brown's response also blatantly two other excessive force cases directly on

3

point and discussed in Plaintiff's motion: *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007), and *Gant v. Hartman*, 924 F.3d 445, 449 (7th Cir. 2019). Both *White* and *Gant* held there was no appellate jurisdiction in circumstances like those here, where there are deep and trenchant disputes about the facts and the inferences that should be taken from certain evidence. Defendants, however, "must 'refrain[ ] from contesting any fact that a reasonable jury could resolve against him.'" *Id.* (quoting *Rainsberger v. Benner*, 913 F.3d 640, 643 (7th Cir. 2019)).

In the end, somewhat ironically, Defendant Heaggan-Brown has ignored the sea-change in law that manifestly gives this Court greater latitude to certify an appeal as frivolous, particularly under the Supreme Court's decisions in *Behrens* and *Johnson* and the Seventh Circuit's numerous decisions in cases like *Stinson, White*, and *Gant*. Thus, while this Court should not rush to certify an appeal under *Apostol*, the law as it exists now (as opposed to one comment in *McCann* from 1992) should control this motion. And, under that law, this Court is entitled to certify an appeal frivolous pursuant to *Apostol* where—as here—a defendant refuses to adhere to the prevailing legal standards.

### B. That Courts Have Exercised Appropriate Restraint In Ruling on *Apostol* Motions, Confirms Plaintiffs' Motion Should Be Granted

Rather than focus on the controlling law above—which is dispositive—Heaggan-Brown spends the first part of his brief contending that this Court's power to certify an appeal as frivolous must be used "sparingly" by pointing to other non-binding authority where courts have declined to issue such a certification. *E.g.*, Br. at 2-4 (citing *Damiani v. Allen*, 2018 WL 6505929 (S.D. Ind. 2018), *Estate of Paul Heenan v. City of Madison*, 2015 WL 3539613, *1 W.D. Wis. 2015), *Hurt v. Vantlin*, 2017 WL 1709499, *3 (S.D. Ind. 2017)). But, none of these decisions are controlling here. Indeed, Heaggan-Brown cites them for abstract propositions, and does not explained how they are in anyway analogous to the circumstances of this case. Those circumstances—found by *this* Court, on *this* record are controlling. *See Stinson*, 868 F.3d at 527-528 (explaining that the District Court's findings are not subject to challenge or reinterpretation on appeal, because they are either questions

4

related to the sufficiency of the evidence or questions of historical fact). *Nor* are these decisions persuasive—they do not involve facts like the shooting in this case, and the availability of summary judgment, particularly in excessive force cases, turns on the facts of that case. *See Cyrus v. Town of Mukowonago,* 624 F.3d 856 (7th Cir. 2010),

In fact, the inference that should be taken from Heaggan-Brown's citation to other courts denying *Apostol* motions is just the opposite of what he suggests: courts have exercised appropriate caution in granting such motions. And, given the extensive law above concerning the improper assertion of jurisdiction before the Seventh Circuit, this Court can comfortably conclude that Plaintiffs' motion should be granted. In other words, "sparingly" does not mean *never*. And, this is the case where such relief is due, particularly because Heaggan-Brown has failed—both at summary judgment and again in response here—to accept Plaintiffs' facts.

## II. Defendant Heaggan-Brown Contests Plaintiffs' Facts, and Those this Court Found At Summary Judgment

Heaggan-Brown claims: "contrary to plaintiffs' contentions, the defendants did not persist in contesting the relevant facts proffered by the plaintiffs." Resp. Br. at 2. Not so. Heaggan-Brown has refused to accept core issues to what happened before, during, and after the gunshots (including, significantly, the second shot). But, this Court found disputes at each juncture. *See* Dkt. 59 at 2 ("The circumstances of the officers' initial engagement with Smith are disputed."); *see also id.* at 3 n.3 ("Defendants claim Smith picked up the gun and held on to it before throwing it over the fence, while plaintiffs say Smith picked up the gun and tossed it over the fence, away from the officers, in a single, fluid motion."); *id.* at 4 (Smith's precise physical movements, from falling near the fence to Heaggan-Brown firing the first shot, are disputed. . . . Plaintiffs also dispute that *any* verbal warning was given by officers prior to Smith being shot."); *id.* at 4 ("Both sides contest the precise mechanics of the fall and moments before the second shot."). Of crucial import, Heaggan-Brown also contests the court's finding that Smith was *subdued* at the time he stood over, and then shot and killed, Smith.

5

Dkt. 59 at 10. Of course, there is no question it would be unconstitutional to shoot and kill a subdued suspect. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

Heaggan-Brown's complaint notwithstanding, he at core challenges this Court's factual findings, depriving the appellate court of jurisdiction and confirming that Plaintiffs' motion must be granted. Indeed, the response brief confirms this in at least three ways.

First, Heaggan-Brown attempts to excise the disputed issues of fact, by claiming that they were "selectively and unfairly summarized" by Plaintiffs in their own favor. But, that is what courts—and Heaggan-Brown—must do at summary judgment. They must take the facts in the light most favorable to the plaintiff, including all of the inferences that flow from those facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Stinson,* 868 F.3d at 528.[1] And, there is no dispute that the determination of reasonableness includes the totality of the circumstances, not just part of them. *See, e.g. Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) ("The operative question in excessive force cases is '"whether the totality of the circumstances justifie[s] a particular sort of search or seizure."' (quoting Garner, 471 U.S. at 8-9)); *Sherrod v.* Berry, 856 F.2d 802, 805 (7th Cir. 1988) (en banc) (courts must examine totality of the circumstances); *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 483 (7th Cir. 2015) ("The sequence of events leading up to the seizure is relevant because the reasonableness of the seizure is evaluated in light of the totality of the circumstances."). This Court followed established law and examined the totality of the circumstances. Dkt. 59 at 8-9.

Heaggan-Brown's attempt to excise facts he deems disputed is really just an attempt to ask this Court (and, apparently, the Court of Appeals) to ignore the totality of the facts that support

---

[1] It is curious that Defendant Heaggan-Brown cites *Tolan v. Cotton*, 572 U.S. 650 (2014), in claiming Plaintiffs (and, really, this Court) have erred by construing the facts in a manner too favorable to Plaintiff. *See* Resp. Br. at 5 n.1. In *Tolan*, in the context of qualified immunity no less, the Supreme Court explained that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and emphasized the "importance of drawing inferences in favor of the nonmovant," finding that the Fifth Circuit had failed to adhere to this core summary judgment standard. 134 S. Ct. at 1866 (citing *Brosseau v. Haugen*, 543 U.S. 194, 195 n. 2 (2004)).

6

Case 2:17-cv-00862-LA   Filed 12/17/19   Page 6 of 11   Document 68

Plaintiffs' position—something that is forbidden both by the law concerning summary judgment and by substantive constitutional law under the Fourth Amendment. It is, of course, vitally important to the first shot whether or not Smith did something aggressive towards Heaggan-Brown, as Heaggan-Brown contends in the moment before the shooting. *Cf. Williams*, 797 F.3d at 484 (examining instances where the Seventh Circuit has recognized that officers could not use significant force in the absence of threats or violence (citing, among other authorities, *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 525 (7th Cir.2012) and *Estate of Escobedo v. Bender*, 600 F.3d 770, 780–81 (7th Cir. 2010)). These authorities—including the holding of *Garner*—make clear that the reasonableness of Heaggan-Brown's second force is also implicated by whether or not Smith was subdued or doing something aggressive that would have posed a reasonable threat. Heaggan Brown's attempt to excise these important issues is really just another way of refusing to adhere to the summary judgment standard—he must all of accept Plaintiffs' facts, but will not.[2]

Second, in a brand new argument, Heaggan-Brown contends that the disputes of fact—those that this Court properly construed in Plaintiffs' favor—are "simply not material." Resp. Resp. Br. at 8. The argument has been waived, *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 695 (7th Cir. 2014), and cannot supply the basis for appellate jurisdiction. *Apostol*, 870 F.2d at 1339. In fact, Heaggan-Brown—who objected to every single one of Plaintiffs' proposed findings of fact (see generally Dkt. 58)—did not ever previously argue these disputes were immaterial. *See generally* Reply Br., Dkt. 57). The notion that the positioning or actions of Smith in the moments up to and during the shooting—e.g., the actual circumstances of the case—are "immaterial" is frivolous. *See Tennessee v. Garner,* 471 U.S. 1, 11-12 (1985); *Sherrod v. Berry*, 856 F.2d 802, 805-06 (7th Cir. 1988) (*en banc*) (reasonableness is determined by examining the circumstances confronted by the officer); *see also*

---

[2] For example, Plaintiffs pointed out that Heaggan-Brown must "concede that Smith was running away from him, trying to disarm himself and never posed a threat of serious bodily harm to the officers, as this Court found." He has still refused to do so.

7

More specifically, to contend, that the fact Smith was "in an incredibly vulnerable position: he was unarmed, on his back, hands above his head, with palms open" is "immaterial" to whether it was constitutionally permissible to shoot him is frivolous. *See Garner*, 471 U.S. at 11. ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); *e.g., Estate of Gonzales v. Hickman*, 2007 WL 3238722, at *3 (C.D. Cal. June 11, 2007) (same); *Wilson v. Maricopa Cty.*, 484 F. Supp. 2d 1015, 1021 (D. Ariz. 2006) (quoting *Apostol*, 870 F.2d at 1339)).

Third, Heaggan-Brown attempts yet another move of distraction that is contrary to the law and, at core, is really just a different way of trying to convince this court to ignore the totality of the circumstances, and the facts as they exist when construed in Plaintiffs' favor. Specifically, before declaring the disputed issues of fact that this Court detailed in its decision "immaterial," Heaggan-Brown asserts that the disputed facts "reflect assertions about subjective intent of Officer Heaggan-Brown or Mr. Smith." Resp. Br. at 7. Heaggan-Brown is mistaken. Under established law, this Court's analysis of the reasonableness of the use of force requires the Court to "examine all the evidence to determine whether the officers' story is consistent with other known facts." *Cyrus*, 624 F.3d at 862. As this Court recognized, the Seventh Circuit required this court to "undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial," particularly given the fact Smith cannot provide evidence, and Heaggan-Brown knows that person most likely to be able to "contradict him . . . is beyond reach." *Abdullahi v. City of Madison*, 423 F.3d 763, 772 n.7 (7th Cir. 2005); *see* Order, Dkt. 59 at 13-14 (applying this law).

By examining the *reasons* Heaggan-Brown gave for acting how he did, and in crediting Plaintiffs' version of events—including that a reasonable jury could credit Plaintiffs' contention the "waistband" idea was fabricated—the Court simply followed the law. *See, e.g.*, Order, Dkt. 59 at 11-

8

12.[3] To be clear: Plaintiffs are *not* seeking an inquiry into Heaggan-Brown's subjective intent in killing Smith. Plaintiffs have not asked this Court to determine whether, for example, Heaggan-Brown's actions were cruel, sadistic, or involved some form of "malice," all of which are not part of the Fourth Amendment inquiry. *Graham v. Connor*, 490 U.S. 386, 399 (1989). Instead, Plaintiffs pointed out evidence that calls into question the reasonableness of Heaggan-Brown's actions. Accordingly, in its discussion of recognizing those disputes, this Court did not engage in or conduct any sort of subjective analysis; it simply examined the evidence to determine whether it was consistent with other known evidence. *Cyrus*, 624 F.3d at 862; *see* Dkt. 59 at 8-10.

### III. Heaggan-Brown's Remaining Contentions Fail

Heaggan-Brown's entire position, in seeking interlocutory review, turns upon excluding the totality of the record at summary judgment. Heaggan-Brown's position turns on excising facts that support Plaintiffs, contrary to Rule 56. Heaggan-Brown's position turns on excising the totality of the circumstances involved in this incident, contrary to established Fourth Amendment law. He cannot seek an interlocutory appeal on this basis.

Heaggan-Brown attempts to salvage an argument for appeal—and skirt *Johnson*—by trying to invent two arguments painted as "legal." First, Heaggan-Brown argues that they should be able to assert this case is controlled by *Conley-Eaglebear v. Miller*, 2017 WL 7116973 (7th Cir. 2019), an

---

[3] This Court did not rely on "assertions about subjective intent" when resolving this issue. Instead, the Court explained "On my review of the record, I find that a reasonable jury could certainly find Heaggan-Brown's belief that Smith might be armed with a second weapon was unreasonable . . . And frankly, the defendants' argument that, in the course of Smith's fall, the movement of Smith's right hand near his waist being perceived by a reasonable officer as a movement for a second gun in his waistband is just not persuasive (at summary judgment, no less) given the court's review of video evidence that indicates Smith's hand was in the vicinity of his waistband for all of three camera stills before moving up towards his head, empty and palm open." Order, Doc. 59, at 11. In other words, even in his response Heaggan-Brown still takes self-serving liberties with the facts, including the analysis of this very Court. But all of this underscores just how much this situation demands certification under *Apostol*. If Heaggan-Brown even refuses to accurately describe this Court's findings, as a mechanism of disputing the facts against him, he certainly may *not* seek an interlocutory appeal under *Johnson*.

9

*unpublished* decision from 2017, that cannot bear upon the qualified immunity analysis for a shooting the year prior, 2016. Moreover, the only way to find that *Conley-Eaglebear* might be persuasive would be to ignore the factual findings this Court found dispositive, which Heaggan-Brown may not do. And, while there are some similarities at an extremely high level of generality (e.g., a man running with a gun), there are myriad differences between the cases, including crucial ones like the fact that (1) the police were responding to a call of a man with threatening people by flashing a handgun, (2) the gun was supposed to be in the waistband. This is a far cry from Smith committing no crime and simply running away, trying to disarm himself, and then being shot when he was unarmed and subdued—which were Plaintiffs' facts, and those this Court found at summary judgment. In other words, to find *Conley-Eaglebear* relevant, Heaggan-Brown must ignore material facts concerning the reasonableness of his own actions. Again, this is something he may not do.

Next, Heaggan-Brown claims there is a "purely legal question" relating to whether the shots are separable. But, these questions are not "purely legal" at all. For this to be relevant, one would need to ignore the Court's conclusion that after the first shot Smith was *subdued*. This is a different circumstance than running away; one that Heaggan-Brown disputes. In addition, for this "separation" issue to be relevant, this Court would need to disregard Heaggan-Brown's statement and then testimony that intentionally fired two separate shots, and that the basis for the second shot was the phantom "waistband" gun, rather than viewing the entire incident as one dynamic event. To be clear, Heaggan-Brown said in his DCI interview and in his deposition he intentionally fired shots, but later tried to recant that story in the second day of his deposition by trying to claim that "the decision to shoot a second [was] justified for the same reasons he fired the first shot." Plaintiff's Statement of Facts, Dkt. 51 at ¶87; *see also id.* at ¶¶82-85.[4] Accordingly, to address this this purported "legal" question, this Court (or the Court of appeals) would need to resolve a question that is

---

[4] The City also admits that Heaggan-Brown "intentionally fired two separate shots at Sylville Smith." Dkt. 51-34, at 5.

10

Case 2:17-cv-00862-LA   Filed 12/17/19   Page 10 of 11   Document 68

contrary to the basis for which Heaggan-Brown sought summary judgment because he repeatedly offered the following as the justification for killing Smith: "after being shot, Smith continued to appear to pose an imminent threat to the officers as he moved his right hand towards his waistband." Mot., Dkt. 45 at 17; *see also id.*, at 12-13, 15, 16, 17, & 18 (making the same argument). He cannot now abandon that position to attempt to seek appellate jurisdiction—that is exactly what it means to "game" the system.[5]

## Conclusion

Heaggan-Brown's response in opposition to Plaintiffs' motion only confirms that it should be granted. Accordingly, Plaintiffs respectfully request that this Court certify Defendant Heaggan-Brown's appeal as frivolous and beyond the jurisdiction of the appellate court and proceed with trial.

RESPECTFULLY SUBMITTED,

s/ David B. Owens
*One of Plaintiffs' Attorneys*

David B. Owens
Danielle O. Hamilton
LOEVY & LOEVY
311 North Aberdeen, 3FL
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on counsel of record on December 18, 2019, via the Court's CM/ECF filing system.

/s/ David B. Owens

---

[5] In light of this Court's finding that, on Plaintiff's facts, a reasonable jury could find Smith was subdued after his the first shot, the law is clear that Heaggan-Brown could not continue shooting. *See, e.g., Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (second batch of shots not justified where the initial round incapacitates the suspects and ends any threat of flight, or if the suspect had given himself up); *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (considering two taser deloyments separately); *Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999) (in assessing reasonableness the Court must "'carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage" *Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999) (quoting *Tom v. Voida*, 963 F.2d 952, 1150 (7th Cir. 1992)).

11